UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
JERMAINE MAKELL,

                          Plaintiff,

        - against -

COUNTY OF NASSAU, et al.,

                        Defendants.
----------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

19-cv-6993 (BMC)

**COGAN**, District Judge.

       Plaintiff brings this action under 42 U.S.C. §§ 1983 and 1985 against several named and unnamed officers of the Nassau County Correctional Center ("NCCC").[1] He alleges deprivations of his civil rights under the Eighth and Fourteenth Amendments of the United States Constitution for injuries he received as a result of getting pepper sprayed in the face by a corrections officer who was responding to a fight in the vicinity of plaintiff's prison cell. Before the Court is defendants' motion for summary judgment. For the reasons set forth below, defendants' motion is GRANTED.

## BACKGROUND

### I. Factual Background

       Plaintiff was a prisoner at NCCC from September 17, 2019 until December 31, 2019. On October 11, 2019, plaintiff was in his cell when an altercation broke out between two prisoners

---

[1] The Court previously dismissed plaintiff's claims for supervisory or Monell liability against the County of Nassau Sheriff's Department and severed and stayed those claims against the County of Nassau and Sheriff Vera Fludd. Considering the disposition of the other defendants in this decision, those claims are dismissed as well.

in his cell's vicinity.[2] Plaintiff was at no point involved in this fight. One of the defendants (the parties dispute which one, but it is immaterial) deployed pepper spray, which struck plaintiff in the face. Plaintiff suffered pain, irritation, and mental distress from being sprayed in the eyes. Additionally, in his attempts to avoid the spray, he turned and "hit [his] face on the wall," which resulted in a loosened tooth.

Immediately following the incident, defendant Corporal John Donald filled out an Inmate Mental Health Service Report. Donald noted that he had "inadvertently exposed" plaintiff to pepper spray and requested a medical evaluation of plaintiff. Sergeant Jonathan Bertin confirmed that plaintiff was "examined and fully decontaminated in the E-building medical unit separately by uninvolved staff."

After the incident, plaintiff "made numerous request[s] for medical treatment for his injuries," putting in multiple sick call requests. These generally noted things like "my eyes are still burning and I can't see straight" because of the spray. Records reflect that various health care practitioners saw plaintiff in response to his complaints. Defendant corrections officers were unaware of any of plaintiff's complaints about the quality of his medical treatment as all medical issues were handled by medical staff, not the corrections officers. Plaintiff did not file any grievance proceedings relating to the incident, although he was aware of the procedure, having previously utilized it for other grievances.

While still a prisoner at NCCC, plaintiff brought this action *pro se* against former Sheriff Vera Fludd, and corrections officers FNU Sailor and Daniel Golden, as well as members of the

---

[2] Defendants contend the fight took place inside of plaintiff's cell; plaintiff contends it occurred in the doorway. The issue is immaterial.

medical staff at NCCC.³ Subsequently, he filed an amended complaint on June 29, 2020 against the same defendants.

On September 23, 2020, plaintiff was released from custody. He obtained counsel to represent him in this action. On November 27, 2020, plaintiff, through counsel, filed a second amended complaint, reasserting his earlier claims, and adding John Donald and unnamed correctional officers as defendants.⁴

Discovery having concluded, defendants have filed a motion for summary judgment.

## DISCUSSION

**I.      Standard of Review**

It is well settled that summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

The party seeking summary judgment carries the burden of demonstrating the absence of any disputed issues of material fact and entitlement to judgment as a matter of law. Rojas, 660 F.3d at 104. The Court must construe the evidence in the light most favorable to the non-moving

---

³ All of plaintiff's claims were dismissed except those against defendant Sailor.

⁴ Plaintiff also substituted the County of Nassau Sheriff's Department and the County of Nassau as defendants in place of the State of New York.

3

party and draw all reasonable inferences in that party's favor. Sledge v. Kooi, 564 F.3d 105, 108 (2d Cir. 2009).

A moving party may indicate the absence of a factual dispute by "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). Once the moving party has met its burden, the non-moving party normally "must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

## II.     Administrative Exhaustion

In the Prison Litigation Reform Act ("PLRA"), Congress provided that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2000); see Porter v. Nussle, 534 U.S. 516, 520 (2002). With very limited exceptions, "[e]xhaustion is mandatory – unexhausted claims may not be pursued in federal court." Amador v. Andrews, 655 F.3d 89, 96 (2d Cir. 2011).

The exhaustion issue in this case arises from the fact that plaintiff filed his second amended complaint after his release from custody. The Court must therefore determine whether his released status relieved him of his obligation to exhaust by reason of the filing of the post-release second amended complaint.

Although the Second Circuit has held that a former prisoner need not exhaust if he commences the action after his release, see Gibson v. City Municipality of New York, 692 F.3d 198, 201 (2d Cir. 2012); Harris v. City of N.Y., 607 F.3d 18, 21–22 (2d Cir. 2010); Greig v. Goord, 169 F.3d 165, 167 (2d Cir. 1999), it has not addressed the situation here. Decisions from

4

other Courts of Appeals are not entirely consistent (as shown below), and the Supreme Court has declined to resolve these inconsistencies. See Wexford Health v. Garrett, 140 S. Ct. 1611 (2020) (Thomas, J., dissenting).

The most thorough discussion of the issue appears in Garrett v. Wexford Health, 938 F.3d 69 (3d Cir. 2019), where the Third Circuit held that a former prisoner's amended complaint filed after his release absolved him of his exhaustion obligation notwithstanding his having commenced the action while in custody and without exhaustion. The Third Circuit first noted that as a rule, "an amended pleading supersedes the original pleading and renders the original pleading a nullity." Id. at 82. It observed that under Fed. R. Civ. P. Rule 15(a) or (d), failures to properly allege subject matter jurisdiction or other "status" considerations as to a plaintiff could be cured by amendment, and the amendment would relate back to the filing of the original complaint. The Court reasoned that under its own precedent and others, the PLRA should not override Rule 15 nor any other of the Federal Rules of Civil Procedure because Congress had not expressly so stated.

In support of its Rule 15 analysis, the Third Circuit relied on the Supreme Court's decision in Jones v. Bock, 549 U.S. 199 (2007), which invalidated, as inconsistent with the Federal Rules of Civil Procedure, a special set of PLRA pleading requirements, including pleading and demonstrating exhaustion, imposed by local rule in the Sixth Circuit. The Supreme Court held that since nothing in the PLRA supplanted the requirement of Fed. R. Civ. P. Rule 8(a) for a "short and plain statement of the claim," failure to exhaust must be viewed as an affirmative defense, and the Sixth Circuit could not turn it into a plaintiff's pleading requirement by local rule.

From this, the Third Circuit reasoned, "<u>Bock</u> teaches . . . that the usual procedural rules apply to PLRA cases unless the PLRA specifies otherwise, and that a decision about whether to apply the usual procedural rules should not be guided by 'perceived policy concerns.'" <u>Garrett</u>, 938 F.3d at 87 (quoting <u>Jones</u>, 549 U.S. at 212). The Third Circuit dismissed concerns that its holding would allow some prisoners to game the system and avoid congressional intent to require exhaustion by failing to exhaust, and then simply waiting until their release before filing an amended complaint on the ground that that was a "perceived policy concern," a consideration which the Supreme Court had discouraged. <u>Jones</u>, 549 U.S. at 212.

I respectfully disagree with the Third Circuit's reasoning, as I do not believe that Rule 15, or any other Federal Rule of Civil Procedure, informs the issue of exhaustion before us one way or the other. First, the Third Circuit overstated the law when it referred to an amended complaints as rendering the original complaint "a nullity." <u>Garrett</u>, 938 F.3d at 82. The original complaint is a nullity only regarding the determination of whether the amended complaint states a plausible claim.[5] It continues to have force and effect for all other purposes.[6]

For example, it is well settled in the Second Circuit that the allegations in the original complaint still constitute admissions by the plaintiff that can be used against him for purposes of summary judgment, trial, or impeachment. <u>See</u> <u>Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP</u>, 322 F.3d 147, 167 (2d Cir. 2003) (the allegations in plaintiff's operative complaint were "judicial admissions" by which plaintiff was "bound

---

[5] Even then, documents annexed to an original complaint can be considered in determining the viability of an amended complaint, regardless of whether the amended complaint annexes the documents. <u>See</u> <u>Poindexter v. EMI Rec. Grp. Inc.</u>, No. 11-cv-559, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012).

[6] Although the Second Circuit has referred to the original complaint as "of no legal effect" once an amended complaint is filed, <u>see</u> <u>Dluhos v. Floating & Abandoned Vessel</u>, 162 F.3d 63, 68 (2d Cir. 1998), it has used that characterization only in situations determining the plausibility of claims in the amended complaint or the curing of jurisdictional defects.

throughout the course of the proceeding") (quotations omitted); U.S. v. GAF Corp., 928 F.2d 1253, 1260 (2d Cir. 1991); Andrews v. Metro N. Commuter R.R. Co., 882 F.2d 705, 707 (2d Cir. 1989) ("The amendment of a pleading does not make it any the less an admission of the party"); accord, Rich v. Associated Brands Inc., 559 F. App'x 67, 70 (2d Cir. 2014).  That extends to using the original complaint for these purposes, even though later amended, in separate or subsequent litigation between the parties.  Cf. United States v. McKeon, 738 F.2d 26, 31 (2d Cir. 1984) ("The law is quite clear that [superseded] pleadings constitute the admissions of a party-opponent and are admissible in the case in which they were originally filed as well as in any subsequent litigation involving that party").  There is thus nothing "null" about the original complaint when used for these purposes.

     In addition, Fed. R. Civ. P. Rule 4(m) requires service of a summons and complaint within 90 days (formerly 120 days) of the commencement of the action upon penalty of dismissal.  Yet the filing of an amended complaint does not restart the clock; it is the date of the filing of the original complaint, not the amended complaint, that remains controlling, at least as to defendants named in the original complaint.  See Bolden v. City of Topeka, Kan., 441 F.3d 1129, 1148 (10th Cir. 2006) ("if we read Rule 4(m) to refer to the most recently filed version of the complaint, regardless of whether the defendant to be served was newly added, dilatory plaintiffs could evade the rule's time deadline by taking advantage of the opportunity under Fed. R. Civ. P. 15(a) to amend the complaint once as of right before a responsive pleading is served; a plaintiff who had never bothered to serve any defendant could avoid altogether the original 120-day deadline simply by filing an amended complaint when it felt like effecting service") (citing Carmona v. Ross, 376 F.3d 829 (8th Cir. 2004)); Charles Alan Wright & Arthur R. Miller, Time Limit for Service, 4B Fed. Prac. & Proc. Civ. § 1137 (4th ed 2022); 1 James Wm. Moore et al.,

Time for Service, Moore's Federal Practice § 4.80 (3d ed 2022); Del Raine v. Carlson, 826 F.2d 698, 705 (7th Cir. 1987) (noting that this construction of the rule prevents the plaintiff from repeatedly filing amended complaints "to extend the time for service indefinitely"); Butterworth v. Town of Greece, 20-cv-6162 2021 WL 241961, at *7 (W.D.N.Y. 2021). Rule 4(m)'s requirement of timely service thus starts with the filing of the original complaint and is not superseded by an amended complaint.

The Third Circuit in Garrett suggested that Jones v. Brock has abrogated holdings such as those cited in the preceding paragraph by reason of its rejection of "perceived policy concerns," but I cannot agree. Jones has no bearing on the issue of whether the filing of an amended complaint post-release remedies a failure to exhaust. This is not only because Jones makes no mention of the issue. It is because Jones is based on the fact that Rule 8(a) constitutes the standard for what a complaint must contain, and it does not mention exhaustion or other pre-suit conditions that are affirmative defenses for the defendant to plead. Jones was thus an easy case, as it seems fairly obvious that the extensive pleading burden that the Sixth Circuit placed on prisoners in custody, including the need to not only plead but demonstrate exhaustion in the complaint, cannot be squared with the requirements of Rule 8(a).

My view is that Jones undermines the Third Circuit's conclusion. The Supreme Court made it clear that a complaint can have no bearing on the exhaustion requirement in the PLRA because that requirement, as an affirmative defense, should have nothing to do with the contents of a complaint. Since a plaintiff need not, and probably should not, make any mention of exhaustion in his complaint, it is hard to see how the filing of an amended complaint can affect any obligation to exhaust.

Once the Third Circuit's approach is stripped of its underpinnings, there is nothing left to do but return to the starting point – the language of the statute. The statute seems clear, providing that "no action shall be brought" without having first exhausted the underlying claims. I cannot see a meaningful distinction between "brought" and "commenced," and even if there was one, the meaning of the phrase "shall be brought" must be twisted badly if it is to include the filing of an amended complaint.

The Third Circuit thought otherwise. It relied on the fact that in <u>Jones</u>, the Supreme Court had characterized the language "no action shall be brought" as "boilerplate language that is used in many instances in the Federal Code." <u>Jones</u>, 549 U.S. at 220. That characterization is certainly accurate in the context in which the Supreme Court made it – when applied to the issue of whether exhaustion is a pleading requirement under Rule 8(a). The Supreme Court, in referring to the language as "boilerplate," was rejecting the defendants' argument that there is a distinction between the meaning of bringing an "action" and asserting a "claim."

But, once again, the "boilerplate" characterization in <u>Jones</u> undermines the Third Circuit's holding when applied to the distinct issue here. What the Supreme Court was saying in <u>Jones</u> is that the word "action" is so well-used that it had no bearing on the issue of whether the PLRA introduced a new pleading requirement at variance with Rule 8(a). That is why, in using the characterization, the Supreme Court noted that "statutory references to an 'action' have not typically been read to mean that every claim included in the action must meet the pertinent requirement before the 'action' may proceed." <u>Id</u>. at 221. However, if we consider the same phrase on the issue of the proper time to determine the need for exhaustion, it is apparent that "no action shall be brought" is so well understood that it must be given its plain meaning. Congress certainly did not mean it to refer to the "the filing of an amended complaint."

In other words, we are not addressing the defendants' efforts in Jones to distinguish between an "action" and a "claim." That argument was somewhat strained or, at least, insufficient to overcome the express standard in Rule 8(a). Rather, we are addressing the meaning of the word "brought." It is the invariability of the meaning of that term – the very fact that it is boilerplate, universally understood based on its plain meaning – that mandates the conclusion that there is no reasonable alternative meaning beyond, well, "brought."

If any further confirmation of this point is necessary, it appears in the Ninth Circuit's decision in Jackson v. Fong, 870 F.3d 928 (9th Cir. 2017), which reached the same conclusion as the Third Circuit's later decision in Garrett. The Ninth Circuit similarly relied on Jones to justify its conclusion that an amended complaint, filed after a prisoner is released, overrides the PLRA's exhaustion requirement. But as in Garrett, the fault of this argument is apparent from the Ninth Circuit's rationale: "Jones . . . forecloses any argument that the statutory reference to an 'action' precludes Jackson from *curing a deficiency in his claim* by amendment." Jackson, 870 F.3d at 934 (emphasis added).

To the contrary, Jones forecloses any argument that a complaint is deficient because it fails to plead exhaustion. In other words, an amended complaint cannot "cur[e] a deficiency" in the original complaint, because Jones makes it clear that there is no deficiency to cure – there was no need to plead exhaustion in the original complaint, and there is no need to plead exhaustion in the amended complaint.[7] Indeed, the whole point of Jones is that there was

---

[7] Ironically, the Ninth Circuit also held that "once a prisoner is no longer in custody, there is nothing to gain by forcing the prisoner through the administrative process." Id. at 936. That seems to me exactly the kind of "perceived policy concern[]" that the Supreme Court rejected in Jones, 549 U.S. at 212, and that the Third Circuit purported to reject in Garrett, 938 F.3d at 90.

It is also probably incorrect. It is common, and in some instances required, for prisoners who are transferred to another prison to commence or continue grievances in the transferor prison. See 7 N.Y. Comp.Codes R. & Regs. § 701.6(h); see also Dabney v. Pegano, 604 F. App'x 1, 4 (2d Cir. 2015). Indeed, this is what happened in the instant action. In none of these cases, including the present case, has any court identified a prison grievance system that does not allow a former inmate to file a grievance. And relieving the federal courts of the need to be the first

10

nothing deficient about that plaintiff's complaint and that the complaint is immaterial to the determine the issue of exhaustion.

Both Garrett and Jackson rejected holdings from other Circuits that reached similar conclusions to that which I have reached here. See Cox v. Mayer, 332 F.3d 422, 425 (6th Cir. 2003) (holding that "plaintiff was required to exhaust any available administrative remedies before he filed suit" and "his suit must be dismissed" even though plaintiff was no longer incarcerated); Harris v. Garner, 216 F.3d 970 (11th Cir. 2000) (en banc) (PLRA exhaustion requirement for a "personal injury" claim is determined when the original complaint is filed, not when an amended complaint is filed). Garrett and Jackson rejected these cases based on their view that its sister circuits' decisions pre-dated Jones. As shown above, however, Jones does not inform the issue before us, and thus the Sixth and Eleventh decisions are more persuasive than Garrett and Jackson.

As it is undisputed that plaintiff failed to exhaust all his claims before bringing them in federal court, his second amended complaint must be dismissed in its entirety. This is true even though plaintiff's second amended complaint appears to add new defendants – including John Donald and various unnamed officers.[8] Although these defendants were arguably added for the first time while plaintiff was not a prisoner, plaintiff is not asserting any new claims against them. Instead, he merely is asserting his very same claims, arising out of the exact same transaction and occurrence, against new parties. Plaintiff cannot get around the exhaustion

---

tribunal to address prisoner grievances – the obvious purpose of the PLRA – is no less applicable whether the prisoner is raising his claim pre-release, after transfer to another prison, or post-release.

[8] Plaintiff's first amended complaint includes the designation "etc." after each defendant. His first amended complaint likely can also be read as applying to the additional "new" defendants.

requirement by doing this. To hold otherwise would subvert the clear intentions of Congress in requiring exhaustion under the PLRA.

### III. Denial of Medical Treatment

Even if plaintiff had exhausted his claims, they would fail on the merits.

Plaintiff contends that defendants are liable under Section 1983 for failing to provide him with proper medical care both immediately following the accident and, in the days and weeks that followed, by ignoring his sick call requests.

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 138 (2d Cir. 2013) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "Yet not every lapse in medical care is a constitutional wrong. Rather, a prison official violates the Eighth Amendment only when two requirements" – one objective and one subjective – "are met." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006) (cleaned up).

For the objective requirement, the prisoner must prove that he was "actually deprived of adequate medical care[,] . . . [as] the prison official's duty is only to provide reasonable care," id. at 279 (citing Farmer v. Brennan, 511 U.S. 825, 844-47 (1994)), and "that the alleged deprivation of medical treatment [wa]s ... 'sufficiently serious' – that is, the prisoner must prove that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005) (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)).

For the subjective requirement, the prisoner must prove that the charged official acted with a sufficiently culpable state of mind. Salahuddin, 467 F.3d at 280-81; see Farmer, 511 U.S. at 835 ("[D]eliberate indifference entails something more than mere negligence . . . [but] it is

12

satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."). The prisoner must ultimately show that the charged official knew of and disregarded "'an excessive risk to inmate health or safety; the official must [have] both be[en] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and . . . must also [have] draw[n] the inference.'" Johnson, 412 F.3d at 403 (quoting Farmer, 511 U.S. at 837); see Phelps v. Kapnolas, 308 F.3d 180, 186 (2d Cir. 2002) (equating "deliberate indifference" with criminal "recklessness"). "[P]rison officials . . . may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844.

The record in this case is clear that plaintiff was immediately treated for his injuries. Contemporaneous notes by defendant Corporal Donald reflect this, as does plaintiff's sick call request from that day which noted that his eyes were "still" burning, suggesting that he had already received medical attention. Even if plaintiff believes his treatment was ultimately inadequate, by providing some treatment, defendants "reasonably responded to the risk," Farmer, 511 U.S. at 844, "and cannot be said to have acted with deliberate indifference."

With regards to plaintiff's subsequent requests for treatment, the individual defendants cannot be liable because there is no evidence of their personal involvement or knowledge. See Spavone v. N.Y. State Dep't of Corr. Serv., 719 F.3d 127, 135 (2d Cir. 2013).[9] It is undisputed that the individual defendants were "unaware of any complaints by Plaintiff about his medical treatment" and that "[m]edical issues are handled by the medical staff, not the corrections officers."

---

[9] Plaintiff also alleges that defendants conspired to and failed to intervene to protect his constitutional rights, but a failure to intervene claim fails if there is no constitutional tort in which a defendant could have intervened. See Marom v. Blanco, No. 15-cv-2017, 2019 WL 3338141, at *12 (S.D.N.Y. July 25, 2019); Edwards v. Horn, No. 10-cv-6194, 2012 WL 473481, at *19 (S.D.N.Y. Feb. 14, 2012).

## IV. Excessive Force and Qualified Immunity

In any event, defendants are protected by qualified immunity as to the excessive force claim.

Plaintiff asserts that when C.O. Sailor allegedly pepper sprayed him, plaintiff was subjected to excessive force in violation of his Eighth Amendment rights, and that the other defendants' failure to intervene makes them liable as well.

A prison official's use of force violates the Eighth Amendment when, objectively, "the alleged punishment [was] . . . sufficiently serious," and, subjectively, "the prison official . . . [had] a sufficiently culpable state of mind." Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997) (internal quotation marks and citations omitted). The objective component "focuses on the harm done, in light of contemporary standards of decency," and thus, "[i]n assessing this component, the court must ask whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009) (internal quotations omitted). The subjective component of the Eighth Amendment excessive-force analysis "requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances . . . ." Harris v. Miller, 818 F.3d 49, 63 (2d Cir. 2016) (internal quotation marks and citation omitted). "The test for wantonness 'is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. (quoting Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003)). In answering this question,

> a court must examine several factors including: the extent of the injury and the mental state of the defendant, as well as "the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response."

14

Id. (quoting Scott, 344 F.3d at 291).

There is a factual dispute as to which corrections officer sprayed plaintiff, and as to whether the other corrections officers saw and could have reasonably intervened. However, the resolution of these issues is immaterial. It was objectively reasonable for the defendant officer to believe that his actions did not violate clearly established law as established by the Supreme Court or the Second Circuit.

"Qualified immunity protects public officials from civil liability only if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Coggins v. Buonora, 776 F.3d 108, 114 (2d Cir. 2015). "[A]n officer enjoys qualified immunity and is not liable for excessive force unless he has violated a clearly established right, such that it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Frost v. New York City Police Dep't, 980 F.3d 231, 252 (2d Cir. 2020) (quoting Kingsley v. Hendrickson, 576 U.S. 389 (2015)). "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus . . . officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." Id. (quoting Kisela v. Hughes, 138 S. Ct. 1148, 1153 (2018)). "Precedent involving similar facts can help move a case beyond the otherwise hazy border between excessive and acceptable force and thereby provide an officer notice that a specific use of force is unlawful." Id.

There is no binding precedent that squarely addresses the facts at issue in this case. However, district courts within this Circuit considering similar facts have repeatedly found that "the secondhand inhalation of pepper spray by persons who were not the intended targets of the discharge does not typically give rise to a constitutional claim." Gutierrez v. City of New York,

15

No. 13-cv-3502, 2015 WL 5559498, at *8 (S.D.N.Y. Sept. 21, 2015); see also McArdle v. Ponte, No. 17-cv-2806, 2018 WL 5045337, at *4 (S.D.N.Y. Oct. 17, 2018) (where plaintiff, as a bystander, was accidentally sprayed with pepper spray, the court found that his "allegations suggest that his exposure to pepper spray, while unfortunate, was at most negligent or accidental. Those allegations are insufficient as a matter of law.").

The cases plaintiff cites to for the proposition that this is violative of clearly established law are inapposite, as they deal with the intentional deployment of prepper spray against individuals who were not resisting. See, e.g., Jackson v Tellado, 236 F. Supp. 3d 636, 669 (E.D.N.Y. 2017) ("the use of pepper spray against a restrained and cooperative person constitutes excessive force"). The circumstances surrounding the use of the pepper spray are different here. For one, plaintiff was not restrained or an arrestee. Moreover, plaintiff was not sprayed intentionally – the officer deployed the pepper spray as a measure to stop a fight between two inmates, after attempting to diffuse the situation with verbal commands and by physically separating the fighting prisoners.

A reasonable jury could not find that it was objectively unreasonable for the defendant officer to believe that deploying pepper spray in these circumstances did not violate the law. This is because where pepper spray "was applied in a good-faith effort to maintain or restore discipline, it . . . will not amount to excessive force under Second Circuit law." Quinones v. Rollison, No. 18-cv-1170, 2020 WL 642018, at *4 (S.D.N.Y. Nov. 1, 2020). There is no evidence to suggest that this is not exactly what occurred here. Therefore, the officer who sprayed plaintiff is entitled to qualified immunity.

As plaintiff's clearly established constitutional rights were not violated, plaintiffs' failure to intervene claims as to the other officers also fail. See Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 129 (2d Cir. 1997).[10]

## CONCLUSION

Defendants' motion for summary judgment is GRANTED.

**SO ORDERED.**

Digitally signed by Brian M. Cogan

_____
U.S.D.J.

Dated: Brooklyn, New York
       April 22, 2022

---

[10] Plaintiff's Section 1985 conspiracy claims fail for the same reason. See Edwards, 2012 WL 473481, at *19.

17